534 A.2d 140

Henry Simmons, Executor of the Estate of Ethel H. Holloway Simmons, Petitioner *v.* Walter Cohen, Secretary of Public Welfare and John C. Brown, Manager, Case Correspondence Unit of Department of Public Welfare; and Martha A. Roberts, Claim Settlement Agent of Department of Public Welfare; and Roger T. Margolis, Assistant Counsel, Chief of Department of Public Welfare, Individual, joint and several liability, Respondents.

Argued June 9, 1987, before Judges CRAIG and DOYLE, and Senior Judge BARBIERI, sitting as a panel of three.

*Robert J. Mulligan, Jr., Robert J. Mulligan, Inc., P.C.,* for petitioner.

*Kate L. Mershimer,* Deputy Attorney General, with her, *Andrew S. Gordon,* Chief Deputy Attorney General, Chief, Litigation Section, and *LeRoy S. Zimmerman,* Attorney General, for respondents.

OPINION BY JUDGE CRAIG, November 24, 1987:

Petitioner Holloway, now deceased and represented by her personal representative, has filed a petition for review addressed to this court's original jurisdiction, seeking relief on behalf of Pennsylvania citizens who have been successful, pursuant to appeals, in obtaining past due Supplemental Security Income (SSI) benefits from the federal government by awards made before April 1, 1983.

Recipients of such SSI awards pursuant to appeal must reimburse the Commonwealth of Pennsylvania for state payments they received from the Commonwealth during the period of time that federal benefits should have been paid. In view of the reimbursement benefit thus obtained by the Commonwealth, the Pennsylvania Department of Public Welfare (DPW) has adopted a policy of reimbursing to the claimant a pro-rata share of the legal costs related to the successful prosecutions of appeals, but only in those cases where the federal SSI award was made on or after April 1, 1983.

The petitioner avers that the exclusion of awardees before April 1, 1983 violates state and federal constitu-

tional provisions, statutory provisions and regulations. As relief, the petitioner seeks damages and an order barring the department from refusing in the future to limit payments by the April 1, 1983 date, as well as orders relating to the notification of entitled persons and the maintenance of a class action.

The respondents removed the case to the United States District Court for the Middle District of Pennsylvania. The federal court retained jurisdiction over the claims based on federal law, but remanded to this court the claims based on state law, staying the federal proceedings pending the decision in the state court.

The state government respondents now move to quash the action as an untimely appeal. In the alternative, those respondents move for summary judgment on the ground that the action lies within the exclusive original jurisdiction of the Board of Claims, but that it should be dismissed, rather than transferred to that board, because it is barred by the statute of limitations applicable to proceedings before the board. Should this court find the action to be within its original jurisdiction, the respondents move for summary judgment on the ground that it is time-barred by either a six-month or a two-year statute of limitations. Finally, the respondents argue that claims against them for damages, interest and attorney's fees (for this litigation) for actions taken in their official capacities are barred by the principle of official immunity.

In 1981, petitioner Holloway sought SSI benefits from the federal Social Security Administration, which initially denied the request, and she appealed that denial through a federal administrative process. During her SSI appeal, Holloway received benefits known as "interim general assistance" from DPW. Holloway ultimately prevailed in her SSI appeal. On March 14, 1983, she received a notice from the Social Security Adminis-

tration, dated March 1, 1983, that she had been awarded a lump sum for back benefits in the amount of $4,892.40, and that a check for that amount had been sent to the Commonwealth of Pennsylvania to pay back DPW for the interim assistance DPW paid to her during the appeal. DPW retained an amount equal to the total interim assistance it had paid, $2,854.40, and refunded the rest to Holloway.

By letter of June 20, 1983, Holloway's counsel for the SSI benefits requested DPW to reimburse his client for a portion of the attorney's fees she incurred in pursuing the SSI appeal. The Social Security Administration had judicially approved those fees, and the petitioner had paid them in full. After various correspondence, DPW denied the request in a letter to Holloway dated July 2, 1984. DPW had adopted an "SSI Attorney's Fee Reimbursement Policy" (SSI Fee Policy), dated June 28, 1983, setting forth the conditions under which DPW would agree to reimburse an attorney's fee for the successful representation of a welfare recipient in an SSI proceeding. The first condition set forth in the SSI Fee Policy is that "[t]he SSI award of record date is on or after April 1, 1983." DPW denied Holloway's request because the record date of her award, March 1, 1983, did not meet this condition.

By letter dated September 7, 1984, Holloway's counsel requested a formal hearing on the amount of the DPW refund. DPW did not respond to that request. Respondents have stipulated that, as a matter of general practice and policy during all times relevant, DPW did not provide a hearing to review the amount it withholds from an SSI lump sum reimbursement when the issue is attorney's fees reimbursement.

Respondent Walter Cohen was Secretary of DPW at the time of these events and was charged with the overall execution of the welfare laws of the Commonwealth

and with the adoption of policies and procedures to carry out those laws. Respondent Roger T. Margolis was Assistant Counsel and Chief of the Civil Recovery Unit of DPW. He developed the SSI Fee Policy, and he sent the letter of July 2, 1984, to Holloway, denying the request for partial reimbursement of attorney's fees. An order of this court, filed May 19, 1987, certified the action as a class action.

## 1. Appellate Versus Original Jurisdiction

Respondents first argue that this action lies within the appellate jurisdiction of this court as provided in 42 Pa. C. S. §763,[1] rather than within the court's original jurisdiction as provided in 42 Pa. C. S. §761.[2] This ar-

---

[1] 42 Pa. C. S. §763(a) provides in part as follows:

(a)  **General Rule.**—Except as provided in subsection (c), the Commonwealth Court shall have exclusive jurisdiction of appeals from final orders of government agencies in the following cases:

(1)  All appeals from Commonwealth agencies under Subchapter A of Chapter 7 of Title 2 (relating to judicial review of Commonwealth agency action) or otherwise and including appeals from the Environmental Hearing Board, the Pennsylvania Public Utility Commission, the Unemployment Compensation Board of Review and from any other Commonwealth agency having Statewide jurisdiction.

[2] 42 Pa. C. S. §761 provides in part:

(a)  **General Rule.**—The Commonwealth Court shall have original jurisdiction of all civil actions or proceedings:

(1)  Against the Commonwealth government, including any officer thereof, acting in his official capacity, except:

. . .

(iii)  actions or proceedings conducted pursuant to Chapter 85 (relating to matters affecting government units);

gument rests on respondents' characterization of DPW's letter to Holloway of July 2, 1984, denying her request for partial reimbursement of attorney's fees, as a "final order" within the meaning of section 763(a) from which her only remedy was to appeal. Petitioners filed this action in this court on August 14, 1985, clearly outside the thirty-day limit for taking an appeal provided in Pa. R.A.P. 1512(a), if the July 2, 1984 letter is found to be a final appealable order.

Respondents rely principally on the recent companion cases of *Hasinecz v. Pennsylvania State Police*, 100 Pa. Commonwealth Ct. 622, 515 A.2d 351 (1986), and *Whittaker v. Pennsylvania State Police*, 100 Pa. Commonwealth Ct. 631, 515 A.2d 347 (1986), both en banc decisions of this court. *Hasinecz* involved the effort of a

---

(iv) actions or proceedings conducted pursuant to the act of May 20, 1937 (P.L. 728, No. 193), referred to as the Board of Claims Act;

. . .

(b) **Concurrent and exclusive jurisdiction.**—The jurisdiction of the Commonwealth Court under subsection (a) shall be exclusive except as provided in section 721 (relating to original jurisdiction) and except with respect to actions or proceedings by the Commonwealth government, including any officer thereof, acting in his official capacity, where the jurisdiction of the court shall be concurrent with the several courts of common pleas.

(c) **Ancillary matters.**—The Commonwealth Court shall have original jurisdiction in cases of mandamus and prohibition to courts of inferior jurisdiction and other government units where such relief is ancillary to matters within its appellate jurisdiction, and it, or any judge thereof, shall have full power and authority when and as often as there may be occasion, to issue writs of habeas corpus under like conditions returnable to the said court. To the extent prescribed by general rule the Commonwealth Court shall have ancillary jurisdiction over any claim or other matter which is related to a claim or other matter otherwise within its exclusive original jurisdiction.

state police officer who had retired to be reinstated in the face of a firm state police policy against reinstatement of former members, and to be granted Heart and Lung Act benefits for the period after his retirement. The court noted that, for the purpose of establishing this court's appellate or original jurisdiction, the letter from the state police to the retired officer denying reinstatement was an adjudication in the broad sense that it was a final order as to a purported property right, even though no hearing was provided. In *Whittaker*, the state police denied the petitioner's application to become a state police cadet without providing him a hearing. This court held that the letter that finally determined that the petitioner was disqualified as a candidate for appointment as a cadet was a final appealable order. Respondents further note that these decisions are consistent with the decision of the Pennsylvania Supreme Court in *O'Brien v. State Employees' Retirement System*, 503 Pa. 414, 469 A.2d 1008 (1983), *cert. denied*, 469 U.S. 816 (1984), in which the Pennsylvania Supreme Court held that an agency's denial of an administrative hearing constituted a final appealable order, a challenge to which lay within the Commonwealth Court's appellate jurisdiction.

The crux of respondents' argument is that DPW's letter to Holloway of July 2, 1984, was an agency decision rendered without a hearing that "subsume[d] the agency's denial of a hearing" and so constituted a final appealable order.

Petitioner argues on the merits of this action that DPW was required to provide a hearing for her dispute as to the amount of her SSI benefits refund under the federal Social Security Act and Social Security regulations, under the express terms of the federal/state compact relating to the interim assistance program in Pennsylvania, and under the Pennsylvania Welfare Code and DPW regulations. However, for purposes of ruling on

respondents' motion to quash this action as an untimely appeal, we need only determine whether the July 2, 1984, letter denying the request for attorney's fees constituted a final appealable order.

We hold that it did not. For the reasons outlined in her arguments on the merits concerning DPW's duty to provide a hearing, petitioner Holloway could not regard the July 2, 1984 letter denying her fees as a final order. Petitioner notes that it is the normal procedure in both the SSI proceeding out of which this case arose, 20 C.F.R. §416.1400, and DPW regulations, 55 Pa. Code §275, especially §275.1(a)(2),[3] that the written initial denial comes first and the hearing follows. In direct response to the July 2, 1984 letter, petitioner requested a formal hearing. All that was necessary for DPW to do to make its fee denial determination a final appealable order was for it to deny the request for a hearing. At that point, Holloway would have been "out-of-court" in the administrative context, *Pennsylvania Dental Association v. Commonwealth Insurance Department,* 512 Pa. 217, 516 A.2d 647, 655 (1986). "An order is 'final' if it precludes a party from presenting the merits of its claim to a lower court (or tribunal). Pular v. Greco, 483 Pa. 68,

---

[3] 55 Pa. Code §275.1(a) provides in part:

(a) *Right to appeal and have a fair hearing.* The policy with regard to the right to appeal and have a fair hearing will be as follows:

(1) The freedom of the applicant or recipient to request a hearing is a fundamental right and is not to be limited or interfered with in any way.

(2) The regulations contained in this chapter, in accordance with the law, afford every person applying for or receiving a money payment, medical assistance, food stamps or services the right to appeal from a Departmental action or failure to act and to have a hearing if he is dissatisfied with a decision refusing or discontinuing assistance in whole or in part.

394 A.2d 542 (1978)." *Id*. A denial of the hearing request would have had such a preclusive effect, and Holloway's only remedy then would have been to appeal.

However, DPW chose not to respond to Holloway's request for a hearing. It was DPW's silence in response to petitioner's request for a hearing that had the practical effect of precluding her from presenting the merits of her case before DPW, not the July 2, 1984, letter informing her that her request for attorney's fees had been denied. Therefore, it would be error for this court to find that this action constitutes an untimely appeal of a final appealable order because no final appealable order was issued by DPW.

The cases relied on by respondents do not dictate a contrary result. *Hasinecz* was an appeal from an express denial by the state police of a request for a hearing. In *Whittaker,* a letter from the Background Investigation Appeal Board, informing the applicant that the determination of the Background Investigation Screening Board disqualifying him had been affirmed, was held by this court to be a final appealable order where that letter expressly informed the applicant that the decision (itself an appeal) was the "last step" in the state police cadet processing cycle. *O'Brien* held simply that:

> [A]n action to compel an administrative agency *which has finally denied a request for hearing* to hold one is, as a matter of statutory interpretation, addressed to the appellate jurisdiction of Commonwealth Court under Section 763 of the Judicial Code, not an action 'originally' commenced in Commonwealth Court as required by Section 723(a) governing direct appeals to this Court as of right.

*O'Brien,* 503 Pa. at 420, 469 A.2d at 1011 (emphasis added).

The *O'Brien* court was concerned with preventing litigants dissatisfied with final agency determinations reviewable in the Commonwealth Court's appellate jurisdiction (and hence appealable to the Supreme court only by discretion) from exercising appeal as of right to the Supreme Court "by the simple expedient of requesting the agency to hear again a matter already finally determined and, if refused, by commencing an action under Section 761 to compel an agency hearing." *Id.*

However, the court observed in a footnote:

> Of course, if an agency refuses to act on a request for hearing in an effort to avoid a final decision that allows appeal, Commonwealth Court would certainly not be powerless to proceed originally under Section 761. Such power is necessary to insure against wholly arbitrary agency refusals to act (a) when such refusals would deny fundamental constitutional rights or due process without any adequate alternative remedy or (b) when an action is wholly arbitrary but not final. Bethlehem Mines Corp. v. Commonwealth, 462 Pa. 207, 340 A.2d 435 (1975). See also Ezy Parks v. Larsen, 499 Pa. 615, 454 A.2d 928 (1982).

*Id.* at 421 n. 8, 469 A.2d at 1011 n. 8.

The foregoing discussion shows that the present action has little in common with these cases. Holloway asserts a property interest in money in the possession of DPW, based on an equitable doctrine that DPW said it was implementing when it adopted the SSI Fee Policy at issue here; she also asserts notice and hearing rights derived from a federal/state compact, state statute, and state and federal regulations. These claims are far more facially substantial than the purported "right" to reinstatement in the face of a longstanding state police

policy against rehiring those who had left voluntarily that was asserted in *Hasinecz* or the nonexistent "property interest" in future employment with the state police asserted in *Whittaker*. Although letters were held to be final appealable orders in those cases, the denials involved there related to interests far more speculative than those asserted by Holloway, and the letters contained either express or strongly implied denials of hearings. As discussed above, Holloway received no response to her express request for a hearing.

The mandamus action in *O'Brien* related to an action that had been fully litigated previously both before the agency involved and on appeal to Commonwealth Court. In contrast, Holloway has never received a hearing on her claim of a right to money currently in the hands of DPW. If this court were to review this matter within its appellate jurisdiction, it would have no record made elsewhere on which to rely. In short, Holloway's situation is far closer to that described in the *O'Brien* footnote—where an agency precludes appeal by refusing to act on a request for a hearing—than it is to the petitioner's situation in any of the cases relied on by the respondents.

Therefore, we conclude that this action is one properly brought within our original jurisdiction and not an appeal of a final agency order that must be quashed because it was not timely filed.

### 2. *Jurisdiction of the Board of Claims*

Respondents next contend that the Board of Claims has exclusive jurisdiction over Holloway's action, depriving this court of original jurisdiction, pursuant to the Act of May 20, 1937, P.L. 728, §4, *as amended*, 72 P.S. §4651-4, which provides in pertinent part:

The Board of Claims shall have exclusive jurisdiction to hear and determine all claims

against the Commonwealth arising from contracts hereafter entered into with the Commonwealth, where the amount in controversy amounts to $300.00 or more.

In support of this argument, respondents cite *Department of Public Welfare v. Moran,* 84 Pa. Commonwealth Ct. 554, 480 A.2d 356 (1984). In *Moran,* an attorney who had successfully represented a welfare recipient before the Social Security Administration filed an action on his own behalf before the Board of Claims to compel DPW to pay a proportional share of his fees on a theory of quasi-contract. This court held that exclusive jurisdiction to hear the claim lay in the Board of Claims.

Petitioner concedes the apparent similarity of *Moran* to this case, but relies on the later decision of the Pennsylvania Supreme Court in *Delaware River Port Authority v. Thornburgh,* 508 Pa. 11, 493 A.2d 1351 (1985), to dispute the applicability of *Moran* here. At issue in *Thornburgh* was whether the Board of Claims or the Commonwealth Court was the proper forum to hear the action of the Delaware River Port Authority (DRPA) to compel the Commonwealth to build a highway leading to an already-constructed bridge according to the terms of a contract between them. The contract was created under the authority of an interstate compact among Pennsylvania, New Jersey and DRPA.

The Supreme Court noted that jurisdiction over exclusively contractual or quasi-contractual matters lies in the Board of Claims, but that, where an obligation derives from statute rather than from contract, a petition for review is properly entertained in Commonwealth Court. Although noting the involvement of a contract, the court found that the legislature had invested the compact under which it was created, and the DRPA itself, with statutory rights and obligations,

which made the dispute more than a mere contract dispute. By authorizing DRPA to enter into contracts and to incur financial obligations and then pledging not to impair DRPA's power to discharge its obligations, the Commonwealth had rendered a pledge to the State of New Jersey and to the holders of DRPA's financial obligations:

> That pledge . . . may not now be made ephemeral by casting the Commonwealth as simply one more contracting party, free like any other to affirm or disaffirm its commitments with only contractual ramifications.

*Id.* at 19-20, 493 A.2d at 1355.

As noted by petitioner, the entire authority for DPW to receive any money from SSI benefits is derived from the compact entered into between DPW and the federal Social Security Administration. Further, because the basic challenges involved in this action are to the validity of the cutoff date contained in DPW's SSI Fee Policy, and to DPW's failure to provide notice and hearings, they are challenges to a departmental policy affecting many recipients, not simply a dispute as to the amount owed under a contract or quasi-contract, as was the case in *Moran*. This action so thoroughly implicates statutory rights that original jurisdiction of the matter lies in this court and not in the Board of Claims.

### 3. Timeliness of the Action

Should this court find that this action is one properly brought within its original jurisdiction, respondents contend that they are entitled to summary judgment because the action is barred either by the six-month statute of limitations provided in section 5522(b)(1) of the Judicial Code, 42 Pa. C. S. §5522(b)(1),[4] or by the

---

[4] 42 Pa. C. S. §5522(b) provides in part:

  (b) **Commencement of action required.**—The following actions and proceedings must be commenced within six months:

two-year statute of limitations provided in section 5524(6) of the Code, 42 Pa. C. S. §5524(6).[5]

Petitioner responds by asserting that the applicable statute of limitations is either that contained in section 5531 of the Judicial Code, 42 Pa. C. S. §5531,[6] providing no limitation, or that contained in section 1411 of the Welfare Code, Act of June 13, 1967, P.L. 31, *as amended,* 62 P.S. §1411,[7] providing a five-year period

---

(1) An action against any officer of any government unit for anything done in the execution of his office, except an action subject to another limitation specified in this subchapter.

[5] 42 Pa. C. S. §5524 provides in part:

The following actions and proceedings must be commenced within two years:

. . . .

(6) An action against any officer of any government unit for the nonpayment of money or the nondelivery of property collected upon an execution or otherwise in his possession.

[6] 42 Pa. C. S. §5531 provides in part:

The following actions and proceedings may be commenced at any time notwithstanding any other provision of this subchapter except section 5521 (relating to limitations on foreign claims):

. . . .

(2) An action by the Commonwealth, a county or an institution district against the real or personal property of persons who were public charges, including mental patients, to recover the cost of their maintenance and support.

(3) An action by the Commonwealth, a county or an institution district against the real or personal property of persons who were legally liable to pay for the maintenance and support of persons who were public charges, including mental patients, to recover the cost of their maintenance and support.

[7] §1411 provides in part:

Any civil actions or criminal prosecutions brought pursuant to this act for violations hereof shall be commenced within five years of the date the violation or violations occur.

of limitation. If the two-year period of section 5524(6) of the Judicial Code should be held applicable, petitioner contends that it has not run.

Before considering the issue of when petitioner Holloway's cause of action accrued, it is appropriate for us to determine which of these proffered statues governs the case. We begin by noting that the six-month statute, section 5522(b)(1), governing actions against an officer of any government unit for anything done in the execution of his office, is, by its own terms, a general statute, which does not apply to "an action subject to another limitation specified in this subchapter." Therefore, although petitioner's action clearly is against officers of a government unit for things done in the execution of their offices, we must examine other limitations provided in the subchapter to see if one of them applies more specifically.

Section 5524(6) imposes a two-year period of limitation for "[a]n action against any officer of any government unit for the nonpayment of money or the nondelivery of property collected upon on execution or otherwise in his possession." Petitioner Holloway bases some of her claims on the alleged failure of respondents to provide required written notice of hearing rights and the hearing itself. However, the gravamen of her central claim is that respondents, by adopting the SSI Fee Policy and applying it to deny her request for reimbursement of attorney's fees, did not pay money in their possession that was due to her. By this description, the action falls within the language of section 5524(6), and it should be governed by the two-year period of limitation.

Petitioner's suggestion that section 5531 of the Judicial Code, providing no limitation, should apply is not persuasive. Subsections (2) and (3) of this section, by their terms, apply only to actions "by the Common-

wealth, the county or an institution district. . . ." Petitioner argues that, despite the literal language of the section, it is made applicable to this action by virtue of the doctrine of equitable recoupment. However, the case principally relied upon by petitioner, *Household Consumer Discount Co. v. Vespaziani*, 490 Pa. 209, 415 A.2d 689 (1980), emphasizes the defensive nature of this doctrine in its relation to the operation of a statute of limitations:

> Recoupment goes to the foundation of the plaintiff's claim; it is available as a defense, although as an affirmative cause of action it may be barred by limitation. The defense of recoupment, which arises out of the same transaction as plaintiff's claim, survives as long as the cause of action upon the claim exists. It is a doctrine of an intrinsically defensive nature founded upon an equitable reason, inhering in the same transaction, why the plaintiff's claim in equity and good conscience should be reduced.

490 Pa. at 219, 415 A.2d at 694 (footnote omitted). Thus, if DPW should later assert a claim against Holloway for overpayment of the SSI benefits here involved, the doctrine of recoupment would permit her to assert failure to pay attorney's fees *as a defense* to limit DPW's recovery. However, that power to raise the issue as a defense at any time does not prevent the running of any appropriate statute of limitation in regard to her raising the issue as an affirmative cause of action.

The contention by petitioner that the five-year period provided in 62 P.S. §1411 should govern this action also is not persuasive. As has been noted already, the language of the six-month statute, 42 Pa. C. S. §5522(b)(1), states that it applies "except to an action subject to another limitation *specified in this subchapter.*" (Emphasis added.) Of course, section 1411 of the

Welfare Code is not a limitation specified in the same subchapter as 42 Pa. C. S. §5522(b)(1).

More directly, however, our view is that section 1411 of the Welfare Code was not intended to apply to actions such as petitioner's. The pertinent language of section 1411 concededly is broad: "Any civil actions or criminal prosecutions brought pursuant to this act for violations hereof shall be commenced within five years of the date the violation or violations occur."[8] However, the context in which section 1411 appears indicates that it was not intended to apply to any action alleging a violation of the Public Welfare Code. Section 1411 is the last section in Article XIV, titled "Fraud and Abuse Control." The entire article, §§1401-1411, was added as an amendment to the Public Welfare Code by the Act of July 10, 1980, P.L. 493, §3. The introductory note to that Act expresses the legislature's intent in enacting Article XIV:

> The General Assembly finds and declares that it is in the interest of the people of Pennsylvania to establish a legal and regulatory basis for controlling medical assistance fraud and abuse of services reimbursed by Federal and State funds. The purpose of the act is not to penalize the majority of recipients and providers who abide by medical assistance laws and regulations, but rather to eliminate fraudulent, abusive and deceptive conduct and practices that may occur. It is in the public interest that medical assistance services be administered and regulated in a way that will ensure that public funds will be properly expended for essential services to medically needy persons.

---

[8] Section 312 of the Act of December 20, 1982, P.L. 1409, 42 P.S. §20072, repealed as much of section 1411 as relates to limitations of time when criminal prosecutions may be brought.

Act of July 10, P.L. 493 at §3. Given this context and expression of legislative intent, our view, as a matter of statutory interpretation, is that the phrase "pursuant to this act for violations hereof" in section 1411 refers only to violations of the Act of July 10, 1980, P.L. 493, that is, to violations of Article XIV and related sections enacted at the same time, not to any and all alleged violations of the Public Welfare Code. Although a public official, as well as a provider or recipient of medical assistance services, might be subject to a civil action or criminal prosecution for fraud or abuse in the delivery of those services, that is definitely not the subject matter of petitioner Holloway's action.

Having determined that the two-year statute of limitations provided in 42 Pa. C. S. §5524 governs this action, we must determine when the period began to run. "The time within which a matter must be commenced under this chapter shall be computed . . . from the time the cause of action accrued. . . ." 42 Pa. C. S. §5502(a). A cause of action accrues when the injured party is first able to litigate the claim. *Department of Public Welfare v. Federated Security, Inc.,* 49 Pa. Commonwealth Ct. 411, 411 A.2d 284 (1980). As petitioner points out, she could not litigate her challenge to the application of DPW's SSI Fee Policy to deny her request for fees until she had standing to do so. Neither she nor other members of the class acquired standing to sue simply by virtue of DPW's adoption of the SSI Fee Policy on June 28, 1983. Rather, DPW's actual enforcement of the policy against her, resulting in alleged injury, was necessary both to confer standing to sue and to create a dispute ripe for adjudication. *Poe v. Ullman,* 367 U.S. 497 (1981); *Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26 (1976); *United Public Workers v. Mitchell,* 330 U.S. 75 (1947). Thus, the earliest possible date of the accrual of petitioner's cause of

action would be July 2, 1984, when she was informed by DPW that her request for fees was denied on the basis of the SSI Fee Policy. Petitioner's filing of this action in this court on August 14, 1985, was well within two years of that date; hence, the action is not time-barred.

As to the effect of this ruling that Holloway's filing was timely on other members of the class, it is clear that, in Pennsylvania, the commencement of a class action in proper form tolls the statute of limitations as to members of the class other than the named representatives. Pa. R.C.P. No. 1701(a) defines "class action" as meaning "any action brought by or against parties as representatives of a class until the court by order refuses to certify it as such or revokes a prior certification under these rules." As noted in the Procedural Rules Committee Notes to Rule 1701, this definition follows language in *Bell v. Beneficial Consumer Discount Co.*, 465 Pa. 225, 229, 348 A.2d 734, 736 (1975):

> When an action is instituted by a named individual on behalf of himself and a class, the members of the class are more properly characterized as parties to the action. A subsequent order of a trial court allowing an action to proceed as a class action is not a joinder of the parties not yet in the action. The class is in the action until properly excluded.

*See also American Pipe and Construction Co. v. State of Utah*, 414 U.S. 538 (1974), holding that the commencement of an action as a class action suspends the applicable statute of limitations during the interim period from commencement until refusal to certify as to all putative members of the class who would have been parties if the action had been certified as such.

As noted previously, this action already has been certified as a class action. That certification was made on

the basis of a determination that the action was filed initially in proper form for a class action, and that it met the various requirements for maintaining a class action. Therefore, the statute of limitations was tolled as to other members of the class on the date of the commencement of this action, August 14, 1985. By this analysis, the only members of the class whose actions might be barred by the two-year period of limitations would be those persons, if any, who were informed by DPW that their requests for attorneys' fees were being denied on the basis of a cutoff date in the SSI Fee Policy after June 28, 1983, when the policy was adopted, but before August 14, 1983, the date two years before the running of the statute was tolled by the commencement of this action.

### 4. Official Immunity

Respondents' final basis for requesting summary judgment in their favor is that petitioner Holloway's action against them for damages, interest and attorney's fees is barred by the principle of official immunity. They outline the public policy basis for this doctrine, that of encouraging unfettered decision-making by public officials in matters that require the exercise of their discretion, free of the chilling effect that fear of unpredictable personal liability almost certainly would impose, and they list criteria this court has established for determining when official immunity should be afforded.

However, respondents' discussion of the doctrine, and their supporting citation, relate entirely to the application of official immunity in cases sounding in *trespass,* principally negligence actions against public officials arising from their performance or lack of performance of discretionary acts. Petitioner contends, to the contrary, that her action is in the nature of a mandamus. The action seeks to compel respondents to per-

form duties as to which petitioner contends they have no discretion, namely, to provide notice of hearing rights and hearings themselves to persons who received SSI refunds from DPW and who dispute the amount of those refunds. The action also seeks to compel respondents to negate their enforcement of the cutoff date provision in the SSI Fee Policy, which petitioner contends was illegal and therefore outside the scope of their discretion. Petitioner asserts that the judgment she seeks is not for damages for injury resulting from negligence, but rather relates to a matter provided by statute:

> A person who is adjudged in an action in the nature of mandamus to have failed or refused without lawful justification to perform a duty required by law shall be liable in damages to the person aggrieved by such failure or refusal.

42 Pa. C. S. §8303.

Petitioner's argument is persuasive. Although the development and approval of the SSI Fee Policy were actions taken within the discretionary powers of respondents, their discretion did not extend so far as to permit the adoption and enforcement of an illegal policy. If, on the merits of this action, it should be found that the cutoff provision in the SSI Fee Policy is illegal, and that the denial of attorney's fees to petitioner and other class members on the basis of the cutoff provision (as well as the failure to provide notice and a hearing) constituted a failure by respondents to perform legally mandated ministerial duties based on an erroneous interpretation of the law, then mandamus will lie to compel the performance of such duties. *Gorton v. Civil Service Commission*, 35 Pa. Commonwealth Ct. 319, 385 A.2d 1026 (1978). In such a case, the principle of official immunity would not be available to shield respondents from liability for damages under section 8303, and hence it will not now serve as a basis for granting respondents' motion for summary judgment.

ORDER

NOW, November 24, 1987, the motions of respondents Walter Cohen and Roger T. Margolis to quash this action as an untimely appeal or, in the alternative, for summary judgment, are denied.